1

**LAW OFFICES OF JOHNNY L. GRIFFIN III**
**JOHNNY L. GRIFFIN, III (State Bar #118694)**

2

**MANOLO H. OLASO (State Bar #195629)**
1010 F Street, Suite 200

3

Sacramento, California 95814
Telephone: (916) 444-5557

4

Facsimile: (916) 444-5558

5

Attorneys for Plaintiff CHRISTOPHER ORR

6

7

**UNITED STATES DISTRICT COURT**

8

**EASTERN DISTRICT OF CALIFORNIA**

9

**SACRAMENTO DIVISION**

10

11

CHRISTOPHER ORR,

Case No.

12

Plaintiff,

**COMPLAINT FOR RACIAL**

13

vs.

**DISCRIMINATION IN EMPLOYMENT**
  1. Employment Discrimination (Title VII)

14

  2. Retaliation (Title VII)
  3. Equal Rights in Employment (41 U.S.C.

15

CHRISTIAN BROTHERS HIGH
SCHOOL, INC.; a California corporation;

    Sec. 1981(a))
  4. Employment Discrimination (Cal. FEHA)

16

LORCAN BARNES, an individual; and
DOES 1 through 50, inclusive,

  5. Racial Harassment (Cal. FEHA)
  6. Failure to Prevent Discrimination (Cal.

17

Defendants.

    FEHA)
  7. Retaliation (Cal. FEHA)

18

  8. Wrongful Termination (California
    Common Law and Cal. Constit, Art. I, Sec.

19

    8)

20

**DEMAND FOR JURY TRIAL**

21

22

Plaintiff CHRISTOPHER ORR, ("ORR") complains and alleges as follows:

23

**I.  JURISDICTION**

24

1.   This Complaint seeks, among other things, damages pursuant to Title 42 U.S.C. §2000e

25

*et seq.,* for violation of ORR's civil rights.  Jurisdiction is founded upon Title 28 U.S.C. §1331 and

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

1

§1343(a)(4).  This Court has supplemental jurisdiction over Plaintiff's California state claims pursuant to 28 U.S.C. §1367.

## II.  VENUE

2.   ORR's claims arose in the County of Sacramento, California.  Therefore, venue is proper in the Eastern District of California pursuant to 28 U.S.C. §1391(b)(2).

## III.  INTRODUCTION

3.   ORR is the former principal at Christian Brothers High School ("the school") in Sacramento, California.  ORR was principal from July 2017 until his sudden and shocking termination in October 2019.  As principal, ORR was responsible for supervising other school administrators, faculty, and staff, and supporting academic programs and student development. Under his tenure, the school maintained high academic standards and vital support for academic and religious programs that enriched students' learning and growth.  ORR'S historic hiring as the school's first African-American principal appeared to herald a new era of racial inclusivity and outreach.  To his dismay, ORR instead encountered a work environment that was hostile towards minorities, in particular towards black students, families, and staff.  The hostility culminated in harassment and retaliation against ORR, particularly by the President of the school: LORCAN BARNES ("BARNES").  On October 11, 2019, BARNES terminated ORR because of enmity towards ORR because of his race and because he associated with students, families, and community members of color, particularly members of the school's black community, in pursuit of expanding opportunities for current and prospective black students, and expanding engagement with the school's predominantly black neighborhood.  ORR'S termination was not due to any genuine concern over his performance as principal.  ORR discharged all of his duties as principal in a satisfactory manner.  As a direct result of his discriminatory termination, ORR suffered damages including, but not limited to, income loss, tremendous damage to reputation, and emotional distress.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

1

## IV.  PARTIES

2

    4.  Plaintiff CHRISTOPHER ORR is a United States citizen.  ORR resides in the County of

3

Sacramento in California.  At all times relevant herein, ORR was an employee within the meaning

4

of Title VII of the 1964 Civil Rights Act (Title 42 U.S.C. §2000e, et seq.) and within the meaning of

5

California's Fair Employment and Housing Act (Cal. Gov. Code §12900 *et seq.*).  ORR was

6

employed by CHRISTIAN BROTHERS HIGH SCHOOL, INC.

7

    5.  Defendant CHRISTIAN BROTHERS HIGH SCHOOL, INC. ("the corporation") is a

8

California non-profit religious corporation that is registered with the California Secretary of State.

9

The corporation operates and manages the school where ORR worked.  At all times mentioned

10

herein, the corporation is an employer within the meaning of Title VII of the 1964 Civil Rights Act

11

(42 U.S.C. § 2000e, *et seq.*), and is an employer within the meaning of California's Fair

12

Employment and Housing Act (Cal. Gov. Code §12900 *et seq.*).  The corporation waived its

13

religious organization exemption under the Fair Employment and Housing Act knowingly and

14

voluntarily by advising in its employee handbook that it prohibits racial discrimination as "protected

15

by applicable federal, state or local law."  Plaintiff relied on this advisement during his employment.

16

    6.  Defendant LORCAN BARNES is an individual and is the President and Chief Executive

17

Officer of the corporation.  At all times mentioned herein, BARNES was a supervisor within the

18

meaning of Title VII of the 1964 Civil Rights Act (42 U.S.C. §2000e *et seq.),* and a supervisor

19

within the meaning of California's Fair Employment and Housing Act (Cal. Gov. Code §12900 *et*

20

*seq.*).  BARNES was ORR'S direct supervisor.  At all times described herein, BARNES was acting

21

within the course and scope of his employment with the corporation.  BARNES is sued in both his

22

official and individual capacities.

23

24

25

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

7.  The true names and identities of DOES 1 through 50 are presently unknown to ORR. ORR alleges on information and belief that each of defendants DOES 1 through 50 were the predecessors of, successors of, parent companies of, subsidiaries of, joint ventures of, or partners of, defendant CHRISTIAN BROTHERS HIGH SCHOOL, INC., or were persons with personal involvement in the misconduct alleged here and were ORR's employers, co-employees, or co-supervisors.

8.  ORR is informed and believes and thereon alleges that at all times mentioned in this Complaint, all defendants and DOES 1 through 50, and each of them, were the agents, employees, servants, parent companies, subsidiaries, joint ventures, partners, and/or co-owners or successive owners of the other defendants named in this Complaint and that at all times, each of the defendants was acting within the course and scope of said relationship with the other defendants.

9.  ORR alleges that the DOE defendants, and each of them, is legally responsible for the incidents and damages set forth here, and that each of said DOE defendants proximately caused said incident, injuries, and damages by reason of their intentional conduct, negligence, breach of duty, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether based upon agency, employment, or control, whether severally or jointly, or upon any other act or omission.  ORR will seek to amend this Complaint as soon as the true names and identities of DOES 1 through 50 are ascertained.

## V.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.  On or about December 17, 2019, ORR filed a charge of discrimination against the defendants with the Equal Employment Opportunity Commission ("EEOC") and California's Department of Fair Employment and Housing (DFEH) on the facts alleged here.  ORR received a

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

right-to-sue letter from the DFEH on December 17, 2019.  ORR received a notice of right-to-sue letter from the EEOC on or about January 16, 2020.

11.  ORR has exhausted his administrative remedies and fulfilled all conditions precedent to suit.

## VI.  FACTUAL ALLEGATIONS

12.  Christian Brothers High School (the "school") is a private, Catholic co-ed high school that opened at its current location in Sacramento, California in 1956.  The school has had predecessor schools dating back to 1876.  In 1956, it was known as Bishop Armstrong High School.  Then, in 1968, it changed its name to Christian Brothers High School.  The school is owned and operated by the defendant corporation.  The school promotes and embodies Lasallian (named after St. John Baptist De La Salle of France) Catholic education values which focuses its energy on creating a community of Catholic educators, academic excellence, promoting Catholic Christian values, and service to the community, particularly the poor and working class.  The corporation receives federal funding under Title II of The Every Student Succeeds Act (see 20 U.S.C. Section 6301, et seq.) for the benefit of its students.  The school follows a Policy Governance model whereby a volunteer Board of Trustees implements its school management and operation policies through, and delegates its authority to manage and operate the school to, its president: LORCAN BARNES.

13.  The school is located in the Oak Park area, southeast of downtown Sacramento.  The neighborhood has a large number of black and Hispanic residents, and the surrounding area has some of the highest concentrations of black and Hispanic residents in Sacramento County.

14.  In April 2017, ORR was hired by BARNES effective July 1, 2017.  ORR was the first ever African-American Principal at the school.  At the time of his hiring, ORR believed that his historic hiring signaled that the school was prepared to address its historically low numbers of

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

minority students, particularly black students, to better reflect the surrounding community.  ORR brought 15 years of experience as an educator and administrator, and was most recently the principal of a school in Stockton, California.  ORR has deep ties to Christian Brothers High School because many members of his family are alumni.  ORR has a son who graduated from the school, and one attending currently.

15.  In July 2017, ORR hired Michelle Williams ("Williams") to be Assistant Principal. Williams was the first African-American Assistant Principal at the school.  ORR and Williams started the 2017-2018 school year together.  ORR's goals as Principal was, among other things, to maintain the school's academic excellence, strengthen faculty support, and initiate a strong bond with the school and the local community which he felt was a first step in addressing the school's historically low minority and black enrollment.

16.  To that end, ORR initiated outreach efforts with Oak Park community organizations to foster a spirit of student community service and to spike interest in local families sending their children to the school.  Such outreach efforts included forging bonds with the local, prominent black church: St. Paul's Baptist Church.  Before ORR had arrived, the school had not made any outreach efforts to St. Paul's. ORR also planned on contacting other outreach organizations including the Oak Park Neighborhood Association, The Language Academy, Salvation Army, Sacramento Urban League, Underground Books, The Guild Theater, and St. HOPE Academy.

17.  Another goal he had was to resurrect the school's reputation in high school sports, specifically football. In the 2017 parent surveys (and surveys thereafter), school parents, alumni, and the school community expressed concern about the direction of athletics at the school. Board members of the established Lasalle Club, which is designed to support Christian Brothers Athletics, also shared their concern with ORR regarding school athletics.  To be responsive to these concerns, ORR envisioned two goals that would directly benefit the school: to generate greater community

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
www.johnnygriffinlaw.com
(916) 444-5557

interest and attention in the school's athletic programs, and to attract local student-athletes that would then boost minority and black enrollment.

18.   When ORR started in 2017, BARNES and his leadership team (also known as the business office) of June McBride (Chief Financial Officer), Myra Makelim (Director of Human Resources), Nancy Smith-Fagan (Director of Advancement) and Kristen McCarthy (Director of Admissions and Communications) indicated that there had been a long-standing culture of negative faculty/staff morale at the school and that the cause was the bad behavior and lack of accountability from teachers and school leaders (principals and assistant principals). During ORR's first year in getting to understand the dynamics of the school, and its faculty and staff, ORR also recognized the morale issue on campus.

19.   However, ORR found that the poor morale was not due to the behaviors of teachers and faculty, but was due to the organizational and leadership structure and actions of the president and the business office. He found that the school administrators, like himself, did not have the authority to make decisions necessary to best support students, teachers and program directors, and that faculty morale was shaken because of a culture of fear and reprisal.

20.   ORR found that the business office of the school, led by BARNES, ran the school and, in many cases, dictated school decisions that should have been made by school administration (principal and assistant principal).  ORR found that the president's and business office's focus and basis in making school decisions was to keep enrollment up (tuition revenue) and debt down, to the detriment of faculty and student support.  ORR found that these business goals were inconsistent with the Lasallian values espoused by the school, and the business's office's meddling with school administration adversely affected school administration and faculty morale.  This broken morale explained the high rate of school administration turnover that an independent accrediting body had noted in its accreditation report.  The school had four principals in the 10 years prior to ORR's arrival, and the accreditation report noted that such turnover was a concern.

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
www.johnnygriffinlaw.com
(916) 444-5557

21.  In two separate accreditation visits that occurred from 2018-2019, the accreditation visiting committees noted in their reports that administrative turnover was problematic. These reports are the Lasallian Catholic Assessment Process (LCAP) and WCEA accreditation report (Western Catholic Education Association) which was formally done by WASC (Western Association of Schools and Colleges).

22.  The LCAP accreditation reports expressed concerned regarding administration turnover, staff and faculty relations, and notably, a need to focus on diversity, cultural awareness, and respect for diverse cultures and ethnicities.  In an E3 Accreditation report, the visiting committee expressed concern about the school's administrative turnover and relationships among administration and leadership personnel.

23.  BARNES and his business office received these reports but did not take steps to remedy the problems highlighted.  Instead, in some instances, BARNES and his business office actively discouraged change, perpetuated hostility towards faculty and staff, and offered unwarranted criticism about faculty's and staff's performance, including ORR's performance.  When ORR defended staff and faculty from unwarranted criticism, he became the target of BARNES' irritation and criticism.  BARNES' unjustified criticism amounted to harassment and discrimination against ORR because of ORR's race: had ORR not been black, BARNES would not have criticized ORR's performance and leadership in defending his staff and faculty from BARNES' criticism.

24.  BARNES was also displeased by ORR's efforts to reach out and create a relationship between the school and the surrounding black and Hispanic community, even though these efforts were consistent with the Lasallian values of serving the immediate community, particularly poor and working class communities.  BARNES, on multiple occasions, discouraged or blocked ORR'S outreach efforts and did so because of ORR's race because he perceived ORR's efforts to forge stronger community ties with the local predominantly black, and Hispanic community stemmed from ORR's racial identity, and because ORR was associating with predominantly black and

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
www.johnnygriffinlaw.com
(916) 444-5557

8

Hispanic community members.  Examples include BARNES blocking ORR'S plan to increase student community service to the local community, school participation in neighborhood meetings and events, and partnering with Sacramento Regional Transit to provide free rides for students.

25. BARNES was also displeased by ORR's efforts to create a stronger athletic program. ORR believed that strong co-curricular and athletic programs enhance the positive perception of the school, and the student experience in Lasallian values and overall school spirit while, at the same time, addressing the well-known racial gap between the school's student body and the local community by attracting local student-athletes through steady and committed youth sports programs.

26.  One of the first steps towards this goal was to have the school hire a football coach who would also serve as the school's assistant athletic director and physical education instructor.  ORR knew from experience that he could attract top coaching talent if he offered one person a full time position with these three job duties.  However, before ORR could pursue these goals that he had envisioned, BARNES blocked his efforts.  BARNES wrested control over athletic programs away from ORR by having the school's athletic director report directly to BARNES instead of ORR. When coaching candidates found out that the position was not full time and that they would report to BARNES instead of to ORR, they dropped the school from consideration.  This was a blow to ORR's vision of attracting local student-athletes of color because many of the coaching candidates had strong ties to the local community.  BARNES also intentionally blocked ORR from any decision-making input for the school's new football stadium.

27.  BARNES took these actions in order to weaken ORR's vision of transforming the school's athletic programs.  BARNES discriminated against ORR because of ORR's race because he perceived ORR's efforts to strengthen the school's athletic programs stemmed from ORR's racial identity, and because ORR was associating with predominantly black, Polynesian, and Hispanic families whose student-athletes were interested in attending the school.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
www.johnnygriffinlaw.com
(916) 444-5557

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

28.  To ORR's shock and dismay, BARNES' hostile attitude towards minorities was on full display during tuition assistance meetings.  BARNES and ORR were part of the school's tuition assistance committee.  BARNES led the committee and always had the final word on what tuition assistance, if any, a family would receive.  ORR witnessed many instances when BARNES would offer a minority family less money than their assessed financial need. During the tuition assistance determination process, the school relied on a third party financial need assessment company called FACTS to determine a family's financial need in connection with tuition assistance.

29.  ORR witnessed BARNES use outrageous criteria to withhold tuition assistance, such as whether a parent was undocumented, whether a minority child was underperforming, whether a minority child had a gay parent, whether a minority child lived in a nice neighborhood, whether a minority family seemed to spend money on athletics, whether a minority family appeared to spend money unwisely.  ORR heard committee members invoke racial stereotypes and make biased comments regarding students and families of color.

30.  In one shocking instance, two African-American students had demonstrated substantial financial need as noted by the financial need assessment company.  The first student (Student A) was an African-American freshman currently enrolled at the school. The financial need assessment company recommended up to $14,000 in tuition assistance.  BARNES started by offering only $8,000. The committee members voted for a higher final offer of $10,000.  In review of Student A, a committee member stated that the student received social security and then speculated that "dad was likely incarcerated."  BARNES asked why this was a late application. The committee member responded by stating that the mom's "elevator doesn't go to the top floor."  ORR noted that BARNES did not correct or admonish the committee member in any way regarding such callous and biased comments.

31.  The second student (Student B) was an African-American student interested in transferring into the school. The financial need assessment company recommended up to $11,000 in

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
www.johnnygriffinlaw.com
(916) 444-5557

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

tuition assistance.  BARNES started by offering only $5,000. ORR recommended $10,500 and questioned BARNES on why BARNES' offer was so low.  BARNES responded by stating the student was a non-Catholic transfer.  BARNES then stated, "We are giving $10,000 to [Student A], the student is a high risk academically, and we could be on the hook for four years. And here we have [Student B] and it will only cost us 4 to 5 thousand bucks for two years."  BARNES recommended to not offer Student a much money and that will "incentivize them to make a move soon."  He stated, "If we send them the message we don't have the tuition assistance you are asking for, then they make a move and this boy starts at the school he is probably going to finish at." BARNES also stated he felt Student A was "not a good investment."

32.  BARNES' decision was then to offer Student A tuition assistance of $6,000, even though the financial need assessment company's recommendation was $14,000. BARNES then decided to offer Student B a total of $7,000, even though the financial need assessment company's recommendation was $11,000. The amount was not enough for Student B and Student B was not able to attend the school due to the financial burden.

33.  In comparison, there were two white families reviewed during this same session whose outcomes were much different.  One family requested $10,000.  BARNES suggested giving them $10,000. The other was a family for which the financial need assessment company recommended $0. BARNES offered $5,000 because the family had sent siblings to the school in prior years.  There are many other instances where BARNES would show favor to white families and disfavor to families of color because of color and race.  This shocking lack of tuition support for black families was consistent with what ORR witnessed as BARNES' disregard for and dismissiveness towards members of the black community.

34.  ORR was also shocked by the crass language and jokes used by BARNES and others on the tuition assistance committee, which included June McBride (Chief Financial Officer) and Kristen McCarthy (Director of Admissions and Communications).  BARNES and others would

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

regularly joke that parents, particularly minority parents, who were denied tuition assistance were part of the "Go Fuck Yourself" group and that they would be sent a "GFY" letter denying tuition assistance. Eventually, ORR witnessed BARNES and other members of the tuition assistance committee use the "Go Fuck Yourself" language and "GFY" acronym in settings outside of the tuition assistance context to refer to any parent, family, or student whose request, appeal, or concern was dismissed by BARNES or people on the tuition assistance committee.

35. ORR openly questioned the tuition assistance decisions which eventually drew BARNES' ire. BARNES discriminated against ORR because of ORR's race because he perceived ORR's advocacy efforts for more tuition assistance, particularly to minority students, stemmed from ORR's racial identity and from ORR's association with black and minority students and their families.

36. ORR realized that his hiring was more for optics than for real change or pursuit of diversity and inclusion. BARNES had run the school for many years, even though school administration was a principal's job. With ORR there, BARNES continued to do more of the same, but this time with an atmosphere of racial negativity. As time went on, ORR witnessed more and more of BARNES' racial animus towards him and others. As time went on, BARNES's discrimination against ORR turned into retaliation and harassment because of race. BARNES began to undermine ORR's authority and image on campus by questioning his leadership and seeking negative comments from his business office about ORR's leadership, even though none of the business office members had anything to do with school administration and were not even educators. BARNES' criticism and retaliation itself was racially demeaning. BARNES told ORR that ORR lacked the "sophistication" necessary for his job.

37. In January 2019, BARNES continued to retaliate against and harass ORR because of race by initiating a "360°" survey of ORR's performance and asking members of his business office (Chief Financial Officer, Director of Advancement, Director of Human Resources, Director of

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
www.johnnygriffinlaw.com
(916) 444-5557

12

Admissions/Communications) to evaluate ORR's performance, even though they did not have regular interaction with ORR, or work day-to-day functions with ORR and his school administration team.  In addition, the business office did not have experience in the school functions overseen by ORR.  Despite fielding unfounded negative comments from the business office, BARNES did not prepare a written "360°" performance review and instead verbally reviewed the results of the "360°" survey with ORR.  ORR disagreed with the unfounded and biased survey results and questioned whether non-educator business office members could credibly and reliably evaluate him as a school administrator.

38.  In February 2019, BARNES continued to retaliate against and harass ORR because of race by placing him on a performance improvement plan.  BARNES did not have genuine concerns about ORR's performance because ORR was performing his duties satisfactorily.  Instead, BARNES' purpose in imposing the plan on ORR was to retaliate against ORR and to undermine ORR's authority and hamper his effectiveness.  The plan did not even identify any performance deficiencies to improve upon.  Instead, the plan only identified goals to be met by ORR.  At the end of school year, in July 2019, BARNES had a meeting with ORR, ostensibly to review the results of the plan.  Instead, it was a "2 minute meeting" in which BARNES advised ORR that it would be ORR's last year as principal and "it was not up for discussion."  At this meeting, BARNES was already aware of negative survey results regarding his performance and leadership.  The Board of Trustees had shared the survey results with BARNES, including ORR's negative comments regarding BARNES.  The survey results are discussed in more detail below.

39.  BARNES never reviewed the goals of the performance improvement plan or whether ORR met the plan goals.   Instead, BARNES' unfounded assessment of ORR's performance deficiencies was a foregone conclusion that was never really up for discussion or for honest, evidence-based evaluation.  BARNES retaliated and harassed ORR in this manner because of

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

13

ORR's race, for ORR's support and advocacy for black students and the local black community, and for ORR's association with members of the black community in school and in the surrounding neighborhood.

40.   BARNES also retaliated against ORR by terminating Assistant Principal Michelle Williams, whom ORR had hired. Williams' termination was made without ORR's support and without evidence of negative performance.  It was ORR who monitored Williams's performance because she reported to him and not to BARNES.  There was no evidence that Williams was performing unsatisfactorily.  BARNES told ORR and the business office that he terminated Williams because of performance, but then BARNES told Williams that he is exercising the school's at will rights.

41.   After BARNES terminated Williams, he communicated to ORR during a one-on-one conference that ORR was not to discuss Williams' termination with anyone.  He also shared that she was given a release agreement in which she was "incentivized to sign right away so she can get a lump sum of money." BARNES also shared a prepared statement to his business office regarding his decision to terminate Michelle Williams. He shared in his statement "I do not excuse people who do not report to me, but I will in extreme circumstances."  BARNES discriminated against, retaliated against, and harassed ORR because of his race because ORR had hired and associated with Michelle Williams, the school's first African-American Assistant Principal.  BARNES' termination of Michelle Williams was designed to deter and dissuade ORR from advocating for black students and from continuing efforts to forge ties between the school and local community.

42.   In April 2019, the school's Board of Trustees asked for selected members of the school to submit anonymous survey answers regarding BARNES' performance and leadership.  ORR advised Mike Daniels—the Director of the Office of Education at the Lasallian District of San Francisco New Orleans—that he had concerns regarding retaliation from BARNES if ORR participated in the survey.  The Lasallian District is part of the Lasallian region of North America of

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
www.johnnygriffinlaw.com
(916) 444-5557

the Institute of the Brothers of the Christian schools.  The District serves over 21,000 students in 8 states including California.  The District supports the education mission of its schools through its organizational structures and initiatives.

43.  Daniels advised ORR that his survey responses would be confidential and recommended that ORR indicate in writing his concerns about BARNES' retaliation on the survey, which ORR did.  ORR gave his honest and candid assessment of BARNES' performance and leadership.  ORR gave due criticism regarding BARNES' interference with school administration, his reputation among faculty for untrustworthiness, his lack of support for the faculty's mission, and his overall responsibility for low faculty morale. At the bottom of the survey, ORR indicated: "Based on what has occurred to people around me, I am concerned that there could be retaliation towards me" And that "the inner-workings have created a very unhealthy and hostile working environment."

44.  At some point between April and June 2019, the Board shared the survey results with BARNES.  After the Board shared the results, BARNES advised the Board that he would not seek to renew his contract beyond July 2020, effectively ending his tenure as president.  In late June 2019, BARNES called ORR and communicated that he decided this would be his last year as president.  On July 15, 2019, the school sent an email to the faculty and staff from Board Chair Stephen Mahaney announcing BARNES' departure.  Then, on July 17, 2019, when BARNES met with ORR regarding the performance improvement plan, BARNES advised ORR that he decided it would be ORR's final year at the school.  This constituted retaliation against ORR based on his race, on his association with black students, Michelle Williams, and with the local black community.  It was also retaliation for ORR's candid survey responses to the Board of Trustees regarding BARNES' performance and leadership.

45.  ORR again contacted Director Mike Daniels of the Office of Education for the Lasallian District of San Francisco New Orleans to re-iterate his concerns regarding BARNES' retaliation and

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

discrimination.  Daniels was unaware of BARNES' decision that this would be ORR's last year. BARNES had made this decision to end ORR's tenure without consulting District leadership.

46.  In August 2019, ORR also contacted Brother Dan Morgan who is a member of the Board of Trustees.  ORR advised Brother Morgan that he was concerned that BARNES was retaliating and discriminating against him. Brother Morgan was not aware that BARNES had decided to end ORR's tenure.  BARNES had made the decision without consulting the Board of Trustees.  Brother Morgan referred ORR to speak with Board Chair Stephen Mahaney.

47.  In September 2019, ORR spoke to Mahaney and expressed his concern about BARNES' retaliation and discrimination. Mahaney asked ORR for time to determine the extent of the Board's involvement and stated he would call him back. When Mahaney called ORR back, Mahaney advised ORR that he had shared ORR's concerns with BARNES and that BARNES had the governance authority to make the decision to end ORR's tenure. Notably, even though ORR reported BARNES' discrimination, retaliation, and harassment to the Lasallian District of San Francisco New Orleans and to the Board of Trustees, an investigation never took place, which is contrary to school policy.

48.  The Christian Brothers employee handbook advises that any claims of harassment (retaliation and discrimination) against the president should be reported to the Board of Trustees. The Board of Trustees Policy Handbook indicates that the Board "ensures a prompt and reasonable investigation of all complaints of harassment, and an appropriate response will be made."  To date, the Board of Trustees has not opened any investigation into ORR's repeated complaints of discrimination, retaliation, and harassment against BARNES.

49.  Finally, on October 11, 2019, after BARNES learned from Board of Trustees Chair Mahaney that ORR complained about BARNES' decision to end his tenure, BARNES abruptly terminated ORR effective immediately.  BARNES mailed ORR a severance package and release of claims which ORR received in the mail on the morning of October 12, 2019.  Then, on October 14,

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

2019, BARNES made ORR's dismissal public via email to families and faculty by telling them that ORR's service had "concluded" effective immediately.  The sudden and unexplained termination led to rampant speculation regarding ORR's departure and placed a great and unwarranted stain upon his reputation.  It is highly unusual for a principal to be terminated in the middle of the school year.  The school enters Christmas recess on December 20, 2019.  The school year resumes classes on January 7, 2020.  Classes for the 2019-2020 school year end on May 28, 2020.

50.  BARNES' termination of ORR was motivated by his racial animus towards ORR, by ORR's association with black students, Michelle Williams, and with the local black community, and retaliation and harassment against ORR because of his race.

51.  ORR's termination was so unusual that the Sacramento Branch of the NAACP sent a letter to Board Chair Mahaney requesting the reasons behind ORR's and Michelle Williams' terminations, specifically asking if they related to bias, discrimination, or retaliation.  On October 28, 2019, Board Chair Mahaney sent a letter to parents stating that the Board of Trustees felt that ORR's dismissal was not inconsistent with school values.  Board Chair Mahaney made this assessment without ever investigating ORR's complaints against BARNES for discrimination, retaliation, and harassment.

52.  On October 28, 2019, ORR personally met with parents and students at the Family Life Center at St. Paul's Baptist Church and responded to the statements made in Board Chair Mahaney's letter to parents.  ORR disputed the Board's assessment and called his dismissal contrary to the school's values and called his termination unlawful, particularly in light of the troubling aspects of BARNES' own departure.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Employment Discrimination**
(Title VII of the 1964 Civil Rights Act; 42 U.S.C. 2000e-2, et seq.)
(Against CHRISTIAN BROTHERS HIGH SCHOOL, INC. and DOES 1 through 50)

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

53.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

54.  The acts and/or omissions of the Defendants alleged herein including, but not limited to, repeatedly undermining and harassing Plaintiff's outreach activity, subjecting Plaintiff to unjustified negative performance reviews, and creating and maintaining a racially hostile work environment constitutes racial discrimination in violation of Plaintiff's rights under Title VII of the 1964 Civil Rights Acts (42 U.S.C. §§2000e, et seq.).

55.  As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered loss of income, emotional distress, humiliation and resulting damage.

**SECOND CLAIM FOR RELIEF**

**Retaliation**
(Title VII of the 1964 Civil Rights Act; 42 U.S.C. 2000e-3, et seq.)
(Against CHRISTIAN BROTHERS HIGH SCHOOL, INC. and DOES 1 through 50)

56.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

57.  The acts and/or omissions of the Defendants alleged herein including, but not limited to, subjecting Plaintiff to unjustified negative performance reviews, making disparaging comments, and threatening termination constituted unlawful retaliation against Plaintiff because he opposed and complained about the racially hostile working environment created and maintained by Defendants.

58.  As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered loss of income, emotional distress, humiliation and resulting damage.

**THIRD CLAIM FOR RELIEF**

**Equal Rights in Employment**
(42 U.S.C. Sec. 1981(a))
(Against all Defendants)

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

18

59.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

60.  The acts and/or omissions of the Defendants alleged herein constitute unlawful discrimination and retaliation against Plaintiff.  Defendants were personally involved and affirmatively participated in depriving Plaintiff of equal rights in the workplace because of his race.

61.  As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered loss of income, emotional distress, humiliation and resulting damage.

**FOURTH CLAIM FOR RELIEF**

**Employment Discrimination**
(Fair Employment and Housing Act; Cal. Gov. Code §12900 *et seq.*)
(Against CHRISTIAN BROTHERS HIGH SCHOOL, INC. and DOES 1 through 50)

62.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

63.  The acts and/or omissions of the Defendants alleged herein constitute racial discrimination in employment and creation and maintenance of a racially hostile work environment in violation of Plaintiff's rights under the California Fair Employment and Housing Act (Govt. Code §12900, et seq.).

64.  As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered loss of income, emotional distress, humiliation and resulting damage.

**FIFTH CLAIM FOR RELIEF**

**Racial Harassment**
(Fair Employment and Housing Act; Cal. Gov. Code §12900 *et seq.*)
(Against all Defendants)

65.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

66.  The acts and/or omissions of the Defendants alleged herein constitute workplace racial harassment in violation of Plaintiff's rights under the California Fair Employment and Housing Act (Govt. Code §12900, et seq.).

67.  As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered loss of income, emotional distress, humiliation and resulting damage.

## SIXTH CLAIM FOR RELIEF

### Failure to Prevent Discrimination
(Fair Employment and Housing Act; Cal. Gov. Code §12940(k))
(Against CHRISTIAN BROTHERS HIGH SCHOOL, INC. and DOES 1 through 50)

68.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

69.  The acts and/or omissions of Defendant alleged herein including, but not limited to, failing to prevent BARNES' discrimination, harassment, and retaliation subjected Plaintiff to workplace racial discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov. Code §12940(k).

70.  As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered loss of income, emotional distress, humiliation and resulting damage.

## SEVENTH CLAIM FOR RELIEF

### Retaliation
(Fair Employment and Housing Act; Cal. Gov. Code §12940(h))
(Against CHRISTIAN BROTHERS HIGH SCHOOL, INC. and DOES 1 through 50)

71.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

72.  Defendants retaliated against Plaintiff for opposing racial discrimination and maintenance of a racially hostile work environment.  The retaliation includes allowing Plaintiff to be

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

subjected to retaliation because of race after complaining to the Board of Trustees about hostile work environment.

73.  As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered loss of income, emotional distress, humiliation and resulting damage.

## EIGHTH CLAIM FOR RELIEF

### Wrongful Termination
(California Common Law; California Constitution, Article I, Section 8)
(Against CHRISTIAN BROTHERS HIGH SCHOOL, INC. and DOES 1 through 50)

74.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

75.  At all times mentioned herein, Defendants knew that Plaintiff fulfilled all of his duties and obligations as an employee.

76.  Defendants terminated Plaintiff in violation of the fundamental public policy that employees shall not be terminated because of race (42 U.S.C. 2000e-2, et seq.; 42 U.S.C. Sec. 1981; Cal. Govt. Code Sec. 12900, et seq.), or in retaliation for opposing workplace racial discrimination (Cal. Gov. Code §12940(h)). Plaintiff's termination also violated his California constitutional right to be free from race-based termination (Cal. Constit., Art. I, Sec. 8).  The termination constituted outrageous conduct committed with malice and oppression.

77.  As a direct and proximate result of his termination, Plaintiff suffered damages, including, but not limited to, back pay, front pay, lost benefits, damage to professional reputation, emotional distress, humiliation, embarrassment, mental anguish, and punitive damages.

## VIII.  RELIEF REQUESTED

WHEREFORE, Plaintiff prays for the following relief:

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

1.  For compensatory, general, and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2.  For punitive and exemplary damages against each Defendant, only as allowed by law, in an amount appropriate to punish Defendants and deter others from engaging in similar conduct;

3.  For costs and reasonable attorneys' fees pursuant to Title 42 U.S.C. § 2000e-5(k), California Government Code §12965(b), and as otherwise authorized by statute or law;

4.  For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

**JURY TRIAL DEMAND:**  Plaintiff CHRISTOPHER ORR demands trial by jury.

DATED: January 23, 2020                    /s/ Johnny L. Griffin, III
                                           Johnny L. Griffin, III
                                           Law Offices of Johnny L. Griffin, III
                                           Attorney for Plaintiff Christopher ORR

Complaint for Racial Discrimination in Employment
Orr v. Christian Brothers High School, Inc., et al.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com